UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ROBERT S. MATUSZCZAK, JR,

            Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

**REPORT AND RECOMMENDATION**

10-CV-1337
(NAM/VEB)

---

## I. INTRODUCTION

In October of 2008, Plaintiff Robert S. Matuszczak, Jr. applied for supplemental security income ("SSI") benefits and disability insurance benefits under the Social Security Act. Plaintiff alleges that he had been unable to work since April of 2005 due to various physical and mental impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff commenced this action by and through his attorneys, Conboy McKay Bachman & Kendall, LLP, Lawrence D. Hasseler, Esq., of counsel, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 21).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for benefits under the Social Security Act on October 14, 2008, alleging disability beginning on April 1, 2005. (T at 97-98, 99-102).[1] The claims were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held in Watertown, New York on May 4, 2010, before ALJ Thomas P. Tielens.[2] (T at 22). Plaintiff, represented by counsel, appeared and testified. (T at 25-52). On June 8, 2010, ALJ Tielens issued a written decision finding that Plaintiff was not disabled under the Social Security Act. (T at 7-17). The ALJ's decision became the Commissioner's final decision on October 27, 2010, when the Appeals Council denied Plaintiff's request for review. (T at 1-3).

Plaintiff, by and through his attorney, timely commenced this action on November 4, 2010. (Docket No. 1). The Commissioner interposed an Answer on February 22, 2011. (Docket No. 9). Plaintiff filed a Brief in support of his action on April 7, 2011. (Docket No. 15). Defendant filed a Brief in opposition on May 23, 2011. (Docket No. 16).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

For the reasons that follow, it is respectfully recommended that the Commissioner's

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 11).

[2] Plaintiff and his attorney appeared in Watertown; the ALJ presided via videoconference from Syracuse, New York. (T at 7).

[3] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

motion be granted, Plaintiff's motion be denied, and that judgment be entered in favor of the Commissioner.

### III. DISCUSSION

**A.   Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the

court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

    **1.    Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2008.  The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2005, the alleged onset date.  (T at 9).

The ALJ concluded that Plaintiff had the following impairments, which the ALJ considered "severe," as defined under the Act: bipolar disorder-NOS;[5] panic disorder with agoraphobia; opiate dependence; arthritis in the left knee; status post left knee arthroscopic surgery; and a history of degenerative disc disease in the lumbrosacral spine. (T at 9). However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings.

---

[5] Biopolar disorder-NOS ("not otherwise specified") refers to a diagnosis of bipolar disorder where the symptoms do not meet precisely the diagnostic criteria for either of the two formal classifications of the disoder (bipolar I and bipolar II). See Stoddard v. Astrue, No. 05-CV-362, 2009 WL 3644212, at *6 (N.D.N.Y. Oct. 27, 2009).

(T at 10-12).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform light work, as defined in 20 C.F.R. §§ 404.1567 (b) and 416.967; in that Plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk/sit for 6 hours in an 8-hour workday; and occasionally engage in postural activities. (T at 12). However, the ALJ found that Plaintiff should only perform employment involving simple instructions and directions. (T at 12). The ALJ determined that Plaintiff could not perform his past relevant work as a painter or construction worker. (T at 16).

Considering Plaintiff's age (40 years old as of the alleged onset date), education (high school), work experience, and residual functional capacity, the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (T at 16). As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act from April 1, 2005 (the alleged onset date) through June 8, 2010 (the date of decision), and was therefore not entitled to benefits. (T at 16-17). As noted above, the ALJ's decision became the Commissioner's final decision on October 27, 2010, when the Appeals Council denied Plaintiff's request for review. (T at 1-3).

### 2. Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed. Plaintiff offers four (4) principal arguments in support of his position. First, Plaintiff challenges the ALJ's step two analysis with regard to his mental impairments. Second, Plaintiff contends the ALJ erred by discounting the opinion of the psychiatric consultative examiner. Third, Plaintiff argues that the ALJ improperly afforded great weight to the non-examining State Agency review consultant's opinion. Fourth, Plaintiff asserts that the ALJ should have

consulted a vocational expert. This Court will address each argument in turn. (Plaintiff does not challenge the ALJ's findings with respect to his physical impairments).

### a. Severity of Mental Impairments

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).

The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

When evaluating the severity of mental impairments, the regulations require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis. Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a). The technique first requires a determination of whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. See 20 C.F.R. § 404.1520a(c)(3).

These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4). A mental impairment is generally found not

7

severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decomposition. § 404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2). If the mental impairment is found to be severe, at the third step of the review, the ALJ must consider whether the claimant's mental impairments meet or medically equal one of the listed impairments. If the impairments do meet or medically equal one of the impairments set forth in the Listings, the claimant will be found to be disabled. If not, the ALJ is then required to assess the claimant's residual mental functional capacity. § 404.1520a(d)(3).

"The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15. "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." Id.

In the present case, the ALJ concluded that Plaintiff's bipolar disorder-NOS and panic disorder with agoraphobia were severe impairments. (T at 9). Plaintiff argues that this finding was inconsistent with the balance of the ALJ's decision because (according to Plaintiff) the ALJ did not assess any limitations imposed by Plaintiff's mental impairments. However, Plaintiff's argument is contrary to the record. The ALJ concluded that Plaintiff had "at most, mild restrictions" with regard to activities of daily living, "moderate limitations with social functioning," and "mild restrictions in concentration, persistence, and pace." (T at 11). When assessing Plaintiff's residual functional capacity, the ALJ concluded that

Plaintiff "should only work a job with simple instructions and directions." (T at 12). Thus, contrary to Plaintiff's argument, there is no inconsistency between the ALJ's severity finding at step two and the balance of his decision. This Court finds no error with respect to this aspect of the ALJ's decision. The ALJ correctly applied the applicable legal standard and his decision is supported by substantial evidence.

### b. Consideration of Dr. Shapiro's Opinion

Dr. Jeanne Shapiro performed a psychiatric consultative examination on January 15, 2009. Upon examination, Dr. Shapiro found Plaintiff's "manner of relating, social skills, and overall presentation" to be "adequate." (T at 227). His thought processes were "coherent and goal directed," but his mood was "depressed." (T at 227). Plaintiff's attention and concentration were noted to be intact, as were his recent and remote memory skills. (T at 228). Plaintiff demonstrated "fair" insight and "poor" judgment. (T at 228).

Dr. Shapiro concluded that Plaintiff "may have difficulty adequately understanding and following some instructions and directions as well as completing some tasks given that he complains of memory and concentration deficits second to bipolar disorder." (T at 228). She also opined that Plaintiff "may have difficulty interacting appropriately with others due to emotional lability and paranoia." (T at 228). Dr. Shapiro found that maintaining a regular work schedule "may be difficult." She also opined that Plaintiff did not appropriately manage stress. (T at 228).

The ALJ afforded "some weight" to Dr. Shapiro's examination, but discounted several of her conclusions as inconsistent with her clinical findings and with the "longitudinal medical evidence in the record." (T at 15).

This Court finds the ALJ's conclusion supported by substantial evidence. Dr.

Shapiro opined that Plaintiff "*may*" have difficulties with some of the basic mental demands of work activity. (T at 228)(emphasis added).  These findings were based largely upon Plaintiff's subjective complaints, as opposed to Dr. Shapiro's clinical findings, which were largely normal (e.g., demeanor and responsiveness to question was "cooperative;" manner of relating, social skills, and overall presentation were "adequate;" thought processes were "coherent and goal directed with no evidence of delusions, hallucinations, or disordered thinking")(T at 227).

Moreover, there was good reason to doubt the credibility of Plaintiff's subjective complaints.  Plaintiff has an extensive history of substance abuse and criminal conduct. (T at 299-302).  Treatment records described Plaintiff as interested in New York State's Vocational and Educational Services for Individuals with Disabilities ("VESID")programs, but procrastinating with regard to follow-up. (T at 329, 335).  Plaintiff was also characterized as a manipulator and complainer by his drug treatment counselor. (T at 329).

In addition, the treatment records generally document mild or sporadic psychiatric symptoms. (T at 202, 206, 273, 282, 284, 298, 299, 329, 333, 335, 338, 344, 348, 352, 353).  As noted above, the records indicate that Plaintiff was referred to and expected to follow-up with job retraining programs offered through VESID, demonstrating that Plaintiff and his treating providers believed he might benefit from such programs. (T at 321, 323-24).

Dr. William Kenny, Plaintiff's treating psychiatrist, assigned a Global Assessment of Functioning ("GAF") score of 50. (T at 203, 206, 209, 211, 213, 216, 218, 220).  "A GAF range of 41-50 indicates that the individual has a 'serious impairment in one of the following: social, occupational, or school functioning.'" Pollard v. Halter, 377 F.3d 183, 186

n.1 (2d Cir. 2004). However, Dr. Kenny's treatment notes consistently described Plaintiff as having clear and coherent thought patterns, good cognitive focus and flexibility, the ability to attend and maintain focus, and good judgment and impulse control. (T at 204-206, 208, 210, 213, 215, 217, 219, 221-22, 288). In September of 2009, Dr. Kenny described Plaintiff's behavior as "under good control" and found "no evidence of any psychosis or signs of depression." (T at 287).

Further, Crouse Hospital assigned a GAF score of 65, which is indicative of mild symptoms. (T at 341).[6] Plaintiff's substance abuse counselor reported that Plaintiff was engaging in "minor" gambling and had "umpired some softball games." (T at 349, 335, 338).[7] It was noted that Plaintiff did not generally present as depressed during therapy. (T at 344, 348, 353).

Plaintiff testified that he travels nearly 180 miles round-trip by automobile to a methadone maintenance program in Syracuse at three times a week and had previously made the trip six times a week. (T at 29). The ALJ found that Plaintiff's ability to attend these treatments and cope with the travel regimen was indicative of the capacity to maintain a schedule, manage a routine, and interact appropriately with others. (T at 15).

"Conflicts in evidence . . . are for the Commissioner to resolve. White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). Where, as here, there are

---

[6]"[A] GAF score of 65 . . . reflects '[s]ome mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning ... but generally functioning pretty well, has some meaningful interpersonal relationships.'" Kohler v. Astrue, 546 F.3d 260, 262 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed.2000)).

[7]During the hearing before the ALJ, Plaintiff testified that he had falsely reported umpiring softball games to his substance abuse counselor in an effort to "get her off my back." (T at 49-51).

11

conflicts in the medical evidence, it is the ALJ's decision that controls as factfinder. Id. Where the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id. (citing Veino v. Barnhart, 312 F.3d at 586).

For the reasons cited above, this Court finds that the ALJ's decision rests on "adequate findings supported by evidence having rational probative force." In sum, Dr. Shapiro's report was not presumptively entitled to controlling or significant weight,[8] and the ALJ had sufficient reasons for discounting the consultative examiner's opinion.

### c.     Consideration of State Agency Consultant's Opinion

The ALJ afforded "great weight" to an assessment provided by a State Agency review consultant. (T at 15). The consultant (identified as "P. Kudler') found that Plaintiff was not significantly limited with regard to his ability to remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; ask simple questions or request assistance; and respond appropriately to changes in the work setting. (T at 248-49).

The consultant assessed moderate limitations in terms of understanding, remembering, and carrying out detailed instructions; sustaining an ordinary routine without special supervision; maintaining attention and concentration for extended periods; and

---

[8]An opinion based upon a single examination deserves limited weight. See Crespo v. Apfel, No. 97 CIV 4777, 1999 WL 144483, at *7 (S.D.N.Y. Mar. 17,1999) ("In making a substantial evidence evaluation, a consulting physician's opinions or report should be given limited weight" because "they are often brief, are generally performed without benefit or review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day.").

social interaction. (T at 248-49).

Plaintiff challenges this aspect of the ALJ's decision, contending that it was contrary to a memorandum issued by Chief Administrative Law Judge Frank Cristaudo on May 19, 2010. In that memorandum, citing POMS Instruction DI 24510.050C,[9] ALJ Cristuado indicated that residual functional capacity determinations by State Agency single decisionmakers ("SDMs") should not be afforded any evidentiary weight at the administrative hearing level. SDMs are non-physician disability examiners who "may make the initial disability determination in most cases without requiring the signature of a medical consultant." 71 FR 45890–01, 2006 WL 2283653.

If the State Agency review consultant was, in fact, an SDM, there is support for Plaintiff's argument that the consultant's opinion should not have been afforded evidentiary weight. See Yorkus v. Astrue, No. 10-2197, 2011 WL 7400189, at *5 (E.D. Pa. Feb. 28, 2011)(collecting cases). However, there is reason to believe that the consultant identified as "P. Kudler" is a licensed psychiatrist in New York State. See Listing for Dr. Peter Kudler, at http://www.med.nyu.edu/biosketch/kudlep01 (last accessed 4/16/12); NYS Office of Professions, Verification Search Peter Kudler, available at http://www.nysed.gov/coms/op001/opsc2a?profcd=60&plicno=143989&namechk=KUD (last accessed 4/16/12).

As such, it appears the ALJ properly relied upon the opinion provided by Dr. Kudler (as opposed to improperly assigning evidentiary weight to the determination of a non-physician SDM). It is well settled that an ALJ is entitled to rely upon the opinions of

---

[9]The "POMS" is the Social Security Administration's "Program Operations Manual System," an internal manual used by Social Security employees to process disability claims.

non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."). Moreover, even if there was some arguable error in this regard, it was harmless because the ALJ's decision was adequately supported by other evidence. In other words, even excluding the Kudler opinion from consideration, the record contains evidence sufficient to sustain a conclusion that Plaintiff retained the RFC to perform the mental demands of unskilled, light work, provided the employment involved simple instructions and directions. (T at 12).

As discussed above, Plaintiff was assigned a GAF score of 65 (T at 341) and his treating psychiatrist consistently characterized Plaintiff as having clear and coherent thought patterns, good cognitive focus and flexibility, the ability to attend and maintain focus, and good judgment and impulse control. (T at 204-206, 208, 210, 213, 215, 217, 219, 221-22). The ALJ reasonably concluded that Plaintiff's ability to comply with his methadone treatment regimen, which involved extensive travel, was indicative of the capacity to maintain a regular work schedule. As such, even excluding the State Agency review consultant's opinion, the record contained "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion." Richardson, 402 U.S. at 401.

      **d.**    **Consultation of Vocational Expert**

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age,

15

education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, the ALJ used the Grids in reaching his disability determination. (T at 16). As the Second Circuit explained in Pratts v. Chater, the applicability of the Grids is determined on a case-by-case basis. Pratts, 94 F.3d at 39 (citing Bapp, 802 F.2d at 605-06). When nonexertional impairments are present, the ALJ must determine whether those impairments "significantly" diminishes the claimant's work capacity beyond that caused by his or her exertional limitations. Id. A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. (quoting Bapp, 802 F.2d at 606).

In the present case, as discussed above, Plaintiff travels three hours (round-trip) several times a week for methadone treatment. Plaintiff contends that the ALJ should have considered this need to travel for treatment as a non-exertional impairment that significantly narrows Plaintiff's possible range of work. However, it appears the methadone is required due to Plaintiff's drug treatment regimen and not his physical or mental impairments. See SSR 96-8p (stating that "RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or

16

combination of impairments"). In any event, even if the methadone treatment was related to a medically determinable impairment, Plaintiff's need for travel is not occasioned by his impairments, but rather by the geographic location of his home and the apparent proximity of his home to a methadone treatment facility. The proper focus at step five is whether work exists in significant numbers in the *national* economy that Plaintiff can perform. See 20 C.F.R. § 404.1566 (noting that "[i]t does not matter" whether work "exists in the immediate area in which you live").

Accordingly, this Court finds no error with respect to this aspect of the ALJ's decision.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. The ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers, the consultative examiners, and the non-examining consultants, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,

Dated: May 31, 2012

Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

**V. ORDERS**

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION**

**WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

May 31, 2012

Victor E. Bianchini
United States Magistrate Judge